## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**QUANIAH R. STEVENSON,**

     **Plaintiff,**

**vs.**

**DELTA AIR LINES, INC.,**

     **Defendant.**

**Civil Action No.
1:16-cv-2571-AT-LTW**

## DEFENDANT'S BRIEF IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff Quaniah Stevenson ("Plaintiff" or "Stevenson") is a former Customer Service Agent at Delta Air Lines, Inc. ("Delta" or "Defendant").  In this lawsuit, she contends that Delta terminated her employment in 2015 because of her race, sex, age and alleged disability in violation of Title VII, the ADEA and the ADA.  Her claim is properly subject to summary judgment.

Delta provides free and reduced-rate travel privileges to its employees  as a valuable privilege of Delta employment.  In addition to the employee and certain eligible family members, each employee can designate up to one travel companion who then also has free Delta travel utilizing the employee's pass privileges.

Among other things, Delta's written policies regarding pass travel state that an employee and his or her designated companion shall use passes only for

pleasure travel and absolutely shall not use passes for any business purposes.  An employee and his or her designated companion traveling for any business purposes must buy a ticket to travel on Delta.

Delta also requires that each employee keep "control" of his or her passes and the passes of their designated companion -- including by ensuring that the employee is aware of all travel in which a designated companion is using the employee's pass privileges and ensuring that the pass is not being used for business travel or any other improper purposes.  Delta's written policies state that misuse of travel passes (including any use of such passes for business travel) subjects an employee to discipline up to termination at Delta.

Stevenson admits that she aware of these rules.  Her employment was terminated after Delta found that she had not kept control of her passes; that her designated companion (who was a producer in the music business) had used his companion passes for business travel in direct violation of the rules; and that Stevenson had not been truthful to Delta about it during its investigation of these events.  Stevenson has no evidence that Delta's decision was because of her race, sex, gender and/or alleged disability, and her claims fail as a matter of law. Accordingly, Delta respectfully requests that the Court grant summary judgment in this case.

## STATEMENT OF UNDISPUTED FACTS

**A.**   **Stevenson's Employment with Delta**

In 2007, Stevenson was hired by Delta as a Ready Reserve (*i.e.*, part-time) Customer Service Agent at Delta.  (Deposition of Quaniah Stevenson ("Stevenson Dep."), p. 67)  She worked at Delta's ticket counter, at Delta's gates, and in the "arrivals area," at the Atlanta Hartsfield-Jackson International Airport.  (Stevenson Dep., p. 102)[1]

**B.**   **Delta's Travel Pass Policies**

As a valuable privilege of Delta employment, Delta provides its employees and certain of their family members and a designated travel companion with free and reduced-rate travel (also known as "Travel Passes").  (Stevenson Dep., pp. 99-100; Declaration of Kelly Nabors ("Nabors Dec."), ¶ 2)  Delta also provides its employees with an additional pass travel benefit known as "buddy passes" -- which allows an employee to provide reduced-rate transportation to friends or family members who are not their designated travel companion.  (Nabors Dec., ¶ 3)

Delta has written policies regarding its pass travel benefits, and periodically issues reminders to employees of the importance of complying with the policies regarding pass travel.  (Stevenson Dep., p. 99 and Exh. 8; Nabors Dec., ¶ 4)

---

[1] While Plaintiff alleges in her Complaint that she was a highly performing employee, the undisputed facts show that she was repeatedly counseled and disciplined for her attendance and job performance during her employment. (Stevenson Dep., pp. 108-16 and Exhs. 9-11)

Among other things, Delta expressly prohibits the use of travel passes for anything other than leisure travel -- and specifically forbids their use for business travel. (Stevenson Dep., pp. 100-01 and Exh. 8, p. 1 and Exh. 13, p. 1)  Business travel is an important source of revenue for Delta, and for that reason Delta does not allow business travelers to utilize Delta passes. (Nabors Dec., ¶ 5)  Business travelers must buy a ticket on Delta. (Id.)

This is a well-known rule at Delta and was admittedly well-known to Stevenson. (Id.; Stevenson Dep., p. 101)  Among other things, on the very first page of Delta's Pass Travel Policy, it states in bold print:

> Any employee or pass rider who uses their pass travel privileges for personal business or other purposes not specifically permitted in this document…. or who violates any other provision of this document, will subject the responsible employee and the pass rider to disciplinary action, up to and including suspension of pass travel privileges and termination of employment.

(Stevenson Dep., Exh. 8, p. 1)  The written policies reiterate that business travel is expressly prohibited. (Stevenson Dep., Exh. 8, p. 2 (stating that travel for business activity is "prohibited")).

Delta also requires that its employees keep "control" of their passes and the passes of their designated companions -- including by ensuring that the employee is aware of the travel being undertaken by their designated companion and that the pass travel is not for business or any other improper purposes. (Nabors Dec., ¶ 6)  Stevenson testified that she was fully aware that Delta employees are responsible

for overseeing and maintaining control of the use of their travel passes and ensuring that their non-employee travel companions comply with these Delta policies relating to travel passes.  (Stevenson Dep., p. 101; Nabors Dec., ¶ 6)

**C.   <u>Delta's Fly Right Campaign</u>**

In approximately 2014, it came to Delta's attention that some of its employees were misusing their travel passes by, among other things, offering them for sale, using them for business purposes or allowing their designated travel companion to use them for business purposes.  (Nabors Dec., ¶ 7; Stevenson Dep., Exh. 12)  Accordingly, in April 2014, Delta issued a Memo and set of Frequently Asked Questions to all of its employees worldwide that again reminded them of the rules and regulations surrounding the use of pass travel, including that such passes cannot be used for business purposes because such actions "are clear violations of the pass policy" and that employees are "responsible for knowing how [their] pass travel privileges are used" by their designated travel companions.  (Stevenson Dep., p. 101 and Exh. 12)

Delta's April 2014 communication to all employees expressly stated "[d]on't share your passes with anyone who intends to use pass travel for business purposes."  (Stevenson Dep., Exh. 13, p. 1, Q. 3)  It also expressly reminded employees that pass travel abuse could result in termination of employment. (Stevenson Dep., Exh. 13, p. 1, Q. 4 and p. 2, Q. 10)

5

Delta's April 2014 memo also informed employees that Delta was beginning an initiative known as the *Fly Right* campaign that was designed to ensure that pass travel abuse is stopped. (<u>Id</u>.; Nabors Dec., ¶ 8) Delta established a new group, known as the Pass Protection Group, "to work to proactively identify cases of possible abuse and investigate them thoroughly." (<u>Id</u>.)

**D.**     <u>**The Pass Protection Group Review of Stevenson's Travel Pass Records**</u>

Delta's Pass Protection Group utilized a set of objective criteria or "parameters" to determine which employees would have their travel pass usage reviewed -- focusing on those employees and travel companions who had very high travel pass usage and those employees who shared "buddy passes" with individuals who had received buddy passes from a substantial number (at least 5) Delta employees. (Deposition of Kelly Nabors ("Nabors Dep.,") [on file at Dkt. No. 62], pp. 159-60, 168)

In 2015, as part of the audit and based on objective criteria, Delta's Pass Protection Group was investigating the pass travel of all employees who had shared "buddy passes" with an individual named Vendell Bailey ("Bailey"). (Nabors Dec., ¶ 10 and Exh. C; Stevenson Dep., p. 155) Bailey had received buddy passes from a number of different Delta employees including Stevenson. (<u>Id</u>.)

Because Stevenson was one of the individuals who had provided travel passes to Bailey, Stevenson's travel pass records (like others who had provided passes to Bailey) were fully and carefully reviewed during the investigation. (Nabors Dec., ¶ 10)  In the course of that review, the Pass Protection Group identified information that showed that Stevenson's designated travel companion, Jovan Dais ("Dais") was traveling frequently, and to numerous disparate locations, in a way that reflected possible business travel.  (Nabors Dec., ¶ 11 and Exh. A) Dais traveled frequently both during the week and during the weekends, at various times and to various locations, often for short duration (frequently 1 or 2 days). His travel included Los Angeles, Phoenix, New York, Houston, St. Louis, Pittsburgh, Dallas, New Orleans, Washington, D.C., San Francisco, New York, Orlando, Salt Lake City, Burlington, Vt., Cincinnati, Las Vegas and Detroit. (Nabors Dec. ¶ 11 and Exh. A, p. 1; Stevenson Dep., Exh. 17)

Further review of public and on-line records by the Pass Protection Group (including public postings by Dais) reflected that Dais was a producer and artist in the music business, and that on at least one of his trips using Stevenson's travel passes (a one-night trip to Los Angeles, California on June 6, 2015), Dais made the trip with a music artist with whom he worked, Caleb Boyett ("Boyett") for the purpose of Boyett engaging in a concert performance.  (Nabors Dec., ¶ 12 and Exh. B; Stevenson Dep., pp. 186-87)  Specifically, the records showed that, using

Stevenson's travel passes, Dais traveled with Boyett to Los Angeles on Saturday June 6, 2015, where Boyett performed in the show that night, and then they flew out the following day.[2]  (Nabors Dec., ¶ 12 and Exh. B; Stevenson Dep., Exh. 17)  The records also reflected that Dais and his work-partner, Boyett, had traveled together with Dais using Stevenson's travel pass benefits on at least one other occasion (a trip to Houston, Texas).  (Id.)  The records further reflected that Dais had paid Boyett's fees associated with Boyett traveling on Delta passes.  (Id.)

**E.**   **The Interview Of Stevenson And The Termination Decision**

Based on the information gathered by a review of documents, the Pass Protection Group decided to interview Stevenson to address the information indicating that her travel benefits were being used by Mr. Dais for his music business.  Stevenson was interviewed by a team that included member of Delta's Pass Protection Group (Mehret Tafesse), a member of Human Resources (Kiha Jones), and a Performance Leader (Francisco Cortes).  (Nabors Dec., ¶ 13 and Exh. C, p. 1; Stevenson Dep., pp. 149-50)

---

[2] The records consisted of, among other things, a poster reflecting that Boyett (who was known in the business by his artist's name, Jino) was performing at the concert.  (Stevenson Dep., p. 187 and Exh. 16, p. 5)  The records also consisted of a Twitter "tweet" by Mr. Boyett (that was re-tweeted by Dais) stating that Mr. Boyett was in Los Angeles on June 6, 2015 (the date that Dais traveled on Plaintiff's travel passes) with Dais and "headed to my show in Bakersfield [California] with [another music artist] @Tyga"  (Stevenson Dep., Exh. 16, p. 1) The records also consisted of pictures of Dais and Mr. Boyett being photographed at the concert.  (Stevenson Dep., Exh. 16, p. 10; Nabors Dec., Exh. C, p. 3)

During her interview, Stevenson was asked a series of questions about the use of her travel passes, including about the use of her passes by Dais.  (Stevenson Dep., p. 160 and Nabors Dep., ¶ 14 and Exh. C)  Stevenson provided information that Delta concluded was not forthcoming and that Delta concluded confirmed the improper use of travel passes.  (Nabors Dec., ¶¶ 14 and 16 and Exhs. C and D)

Stevenson's interview was memorialized in a lengthy and detailed memo written by Delta's Pass Protection Group member Mehret Tafesse.  (Nabors Dec., ¶ 14  and Exh. C)  As reflected in the Memo written by Tafesse, among other things:

- Stevenson confirmed that Dais was her boyfriend and travel companion, and that he was a music producer.  (Nabors Dec., Exh. C, p. 1)

- Despite these facts, and even though she stated she made the travel arrangements for Dais on her travel passes, Stevenson stated she was unable to identify a large majority of the locations where he had traveled in the recent past.  (Nabors Dec., Exh. C, p. 1)

- When Stevenson was asked whether she had ever traveled with her companion and boyfriend Dais, she initially stated yes -- that they had traveled together multiple times and that they had recently traveled to a funeral together in Los Angeles.  However, when Stevenson was told Delta's records reflected that Stevenson and Dais had *never* traveled together, she retracted her prior statement and contradicted herself by denying that she

9

had just said that she had traveled with Dais to a funeral.  However, she
continued to maintain (in contravention of Delta's travel records) that she
and Dais had traveled together in the past (although she did not identify
where).  (Nabors Dec., Exh. C, p. 2)[3]

- When Stevenson was told that public records reflected that Dais and Boyett
  had traveled together to Los Angeles for the concert performance, Stevenson
  initially stated she did not know anything about that.  She then
  acknowledged that at least Boyett (who she referred to as Dais' "friend")
  was performing in the concert.  (Nabors Dec., Exh. C, p. 2)[4]

-------

[3] It is undisputed that -- despite being travel companions -- Plaintiff and Dais *never*
traveled together (obviously begging the question of why Plaintiff would designate
someone she does not travel with as a "travel companion").  (Stevenson Dep., p.
169, 171)   During her deposition, Plaintiff at first denied stating to the
interviewers that she and Dais had traveled together.  (Stevenson Dep., pp. 169-71)
But she then admitted that she could not recall the precise conversation, and indeed
admitted that she did raise the topic of traveling to a funeral.  (Stevenson Dep., p.
171)  The summary of the interview reflects clearly that the Plaintiff did, indeed,
raise the topic of the funeral -- and did so for the sole purpose of falsely claiming
that she and Dais had traveled together to attend a funeral.  (Nabors Dec., Exh. C,
p. 2; Nabors Dep., pp. 101-02)  There is no other logical explanation (and Plaintiff
provides none) for why she would have raised the topic of a funeral at this meeting
-- and Delta found this statement (as well as Plaintiff's claims that Dais had not
used the benefits for business purposes) to be false.  (Nabors Dep., pp. 101-02)

[4] During her deposition, Plaintiff was asked about her statements at the interview
and what she told the interviewers about Dais' travel using her passes.  Plaintiff
offered a host of different and internally-inconsistent versions of what she told
Delta in that interview.  She testified, at various points, that she told Delta that she
did not know what Dais was doing in California because she did not ask him; that
she did ask him, and that he was there for a concert; that she did ask him, and he

Tafesse's memo summarizing the interview of Stevenson, along with the other information gathered in connection with the investigation, was reviewed by Delta Airport Customer Service Performance Leader Mark Harris -- who recommended to Station Manager Kelly Patton that Ms. Stevenson's employment be terminated as she was "not forthcoming regarding her current companion and his travel;" as "she could not provide his place of travel; and as "[r]esearch by [Equal Opportunity] indicates her companion used non-revenue benefits for business purposes."  (Nabors Dec., ¶ 15  and Exh. D)

Station Manager Patton agreed with Performance Leader Harris' recommendation.  (Nabors Dec., ¶ 16)  Thereafter, Delta Senior Manager - Human Resources, Barbara Franz, also reviewed the investigation materials and also concurred with the termination decision.  (Id.)

After her employment was terminated, Stevenson appealed her termination and claimed for the first time that Dais had traveled to California on the weekend of June 6, 2015 for a "graduation ceremony" for one of his children.  (Stevenson Dep., pp. 231-32, 233 and Exh. 21)  While this explanation was illogical given the 24-hours that Mr. Dais was in California (having flown in Saturday June 6, attended the concert that evening, and having flown out on Sunday June 7), Delta

---

was not there for a concert but to visit his daughter; that she did know, and that he was there for the concert; and numerous other accounts about what she said, and did not say, at the interview.  (Stevenson Dep., pp. 173-85)

nonetheless gave Stevenson the opportunity to produce any documents supporting this "graduation" explanation.  (Id.)  Stevenson could produce no document supporting any such graduation to Delta.  (Stevenson Dep., p. 235)

**F.    Facts Related to Stevenson's 2014 Work Injury And Her Full Release to Return to Work**

Because Stevenson asserts in her Complaint that she suffered a work-related injury that constituted a disability, and contends that Delta thereafter violated the ADA in its treatment of her, Delta briefly summarizes the facts regarding her alleged disability.

In 2014, Stevenson injured her shoulder, neck and back when a luggage bag fell on her.  (Stevenson Dep., pp. 25, 207, 213-14)  She was released to full duty work without any restrictions in October 2014 and was never again restricted from performing any of her work assignments at Delta.  (Stevenson Dep., p. 222-24)  Other than seeking time-off after her 2014 injury that was granted, Stevenson never asked for any accommodation relating to her work-related injury.  (Stevenson Dep., pp. 89-94, 222 and Exh. 7)[5]

---

[5] Plaintiff did, at one time (at the suggestion of her Performance Leader Carol Kerr) seek an adjustment to her shift to address some personal problems that she was having related to her car and an aunt who had recently passed away -- and her request was granted.  (Id.)  However, she made no other accommodation request -- and no request relating to her 2014 work-related injury -- as she had no limitations related to that injury.  (Stevenson Dep., pp. 223-24)  While Plaintiff alleged in her Complaint that she made an accommodation request to have an adjusted work schedule or limited standing and breaks, she testified on deposition that this is

## ARGUMENT AND CITATION OF AUTHORITY

**A.**   **Stevenson's Claims That She Was Unlawfully Discriminated Against And Terminated Because Of Her Race, Sex, Age And/Or Alleged Disability Status Set Forth In Counts I, II, III, And IV Of Her Complaint Should Be Dismissed.**

Stevenson's ADA, ADEA, Title VII and Section 1981 discrimination claims are governed by the familiar McDonnell-Douglas burden-shifting framework.  See Trask v. Sec'y, Dept. of Veteran Affairs, 822 F.3d 1179, 1192 (11th Cir. 2016)(quoting Burke-Fowler v. Orange Cty., 447 F.3d 1319, 1323 (11th Cir. 2006)). See also Stinson v. Public Serv. Tel. Co., 486 Fed. Appx. 8, 9-10 (11th Cir. 2012) (employment claims under § 1981 are governed by the same legal standards that apply to claims under Title VII).  Under this framework, the plaintiff is first required to establish a *prima facie* case of discrimination.  Cornell v. Brennan, 2019 U.S. App. LEXIS 17715, at *2-3 (11th Cir. June 13, 2019) (citing, *inter alia*, Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010)).   In order to make out a *prima facie* case of discriminatory termination, it is "black letter" law that a plaintiff must show that she (1) is a member of a protected class; (2) was qualified for the position from which she was terminated; (3) was terminated; and (4) was treated less favorably that substantially similar employees outside his protected class.  Lewis v. City of Union City, 918 F.3d 1213, 1221 (11th

---

incorrect and that she did not make any such accommodation request.  (Stevenson Dep., p. 223-24)

Cir. 2019).  When attempting to set forth a *prima facie* case using comparables, "the plaintiff and the employee(s) they identify as a comparator must be similarly situated in all material respects."  Lewis, 918 F.3d at 1229 (11th Cir. 2019). See also Trask, 822 F.3d at 1192.

If the plaintiff establishes a *prima facie* case, then the defendant must carry the "exceedingly light" burden of articulating a legitimate, nondiscriminatory explanation for the decision.  Id. (citations omitted); Meeks. v. Computer Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994).  If it does so, the plaintiff must offer evidence that the alleged reasons for the employer's actions are a pretext for illegal discrimination.  Id.; Perryman v. Johnson Prods. Co., 698 F.2d 1138, 1143 (11th Cir. 1983).

Here, Stevenson cannot prove even a *prima facie* case of discrimination. The only "adverse employment action" that she can even theoretically challenge in this lawsuit is her termination from Delta.[6]  And she cannot satisfy the third prong

---

[6] Other than her termination, the only "discipline" that Stevenson received at any time after 2010 (and that would even theoretically be within the 180-day or 4-year limitations period for the claims asserted by Plaintiff) were minor workplace counselings.  (Stevenson Dep., pp. 108-16 and Exh. 9).  It is black-letter law that such minor workplace counselings are not "adverse employment actions" that are subject to challenge under Title VII, the ADEA, the ADA or § 1981.  See e.g., Clark v. Potter, 232 Fed. Appx. 895, 897 (11th Cir. 2007)(letter of warning that had no effect on the plaintiff's employment was not an adverse employment action); Austin v. City of Montgomery, 196 Fed. Appx. 747, 753 (11th Cir. 2006)(counseling memos not adverse employment actions); Summerlin v. M&H Valve Co., 167 Fed. Appx. 93, 97 (11th Cir. 2006)(a reprimand that does not "have

of the *prima facie* case because she admittedly cannot point to any evidence of

unlawful discrimination, including any "similarly situated" individual outside of

her protected classification who was treated more favorably than her.  (Stevenson

Dep., pp. 205-06)  Stevenson cannot identify anyone, of any race, age or sex, who

Delta found to have lost control of their passes and allowed them to be used for

business travel, and who Delta then found to be untruthful during an investigation,

who was not treated the same.  (Id.)  See Brown v. Bd. of Regents of the Univ.

Sys. of Ga., 2016 U.S. Dist. LEXIS 183830 (N.D. Ga. Feb. 12, 2016) (because

plaintiff failed to raise a genuine issue of material fact as to whether similarly

---

an impact on an important condition of employment, such as salary, title, position,
or job duties," is not an adverse employment action).

   Further, while Plaintiff does not assert any hostile work environment claim in her
Complaint, even if she did, the events she alleges would also not remotely create a
hostile work environment.  While Plaintiff complains that her supervisor, Ms. Kerr,
twice counseled her about her uniform -- and one time told her to step aside
because she was working too slowly during a busy "irregular operation" at Delta
(Stevenson Dep., pp. 116-23), such minor events do not remotely approach any
"hostile work environment" under the law.  See e.g., Cheatham v. DeKalb Cty.,
2015 U.S. Dist. LEXIS 176004, at *31 (N.D. Ga. Dec. 10, 2015) (even a
suspension threat coupled with other conduct not sufficiently severe and pervasive
to constitute a hostile work environment).  Finally, even if any of the events about
which Plaintiff complains were adverse employment actions or harassment,
Plaintiff has absolutely no evidence that any of them were based on any protected
characteristic or violated the law in any way.

situated employees from outside of his protected class were treated more favorably, summary judgment was granted on discrimination claim).[7]

Even if Stevenson could establish a *prima facie* case, Delta has certainly met its "exceedingly light" burden of articulating a legitimate, nondiscriminatory reason for its actions -- specifically its conclusions about Stevenson's failure to maintain control of her travel benefits in a way that permitted her travel companion to use them for business purposes and its determination that she was not truthful in the investigation.  Stevenson has no evidence to demonstrate that this is pretextual and that race, gender, age, disability status or any other protected classification was the true reason.

Stevenson's claim of discrimination is not really a discrimination claim at all.  Her real claim is that, in her opinion (and despite the evidence to the contrary), Dais was not using his passes for his business -- and that Delta should have simply

---

[7] Discovery in this case has taken place over more than 4 years.  During that time, Plaintiff has requested and received thousands of pages of documents from Delta in connection with her efforts to identify any similarly situated individual outside of Plaintiff's protected classes who was not terminated.  Plaintiff has identified no such individual and, instead, has received information confirming that Delta has terminated individuals of all races, ages, and disability statuses for travel pass violations.  Most recently, the Court permitted Plaintiff to obtain more than two dozen additional files of white employees that were investigated for travel pass violations but received discipline less than termination.  [Dkt. No. 67]  Delta produced the records which established, again, that none of these individuals engaged in the wide array of travel pass misconduct in which Plaintiff engaged.

agreed with her when she said this was "pleasure travel." (Stevenson Dep., pp. 188-91)

Of course, Stevenson's purported opinion or disagreement with Delta's conclusions is ***not*** the relevant question in this (or any) discrimination lawsuit. As the controlling law makes clear, the only issue is whether Delta concluded in good faith that Dais was using his passes for business travel connected with his music business and concluded that Plaintiff had lost control of her travel passes and lied to Delta about it. The evidence is undisputed that Delta reached precisely this conclusion. See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) ("federal courts do not sit as a super-personnel department that reexamines an entity's business decisions. . . . Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior.") (citations omitted); Owusu-Ansah v. Coca-Cola Co., 2011 U.S. Dist. LEXIS 160029, at *22 (N.D. Ga. June 17, 2011) (Johnson, M.J.) (citing Elrod and holding that an employee's denial that he engaged in misconduct was "irrelevant, as defendant's decision maker in this case.... believed that he had ..."); Moore v. Sears, Roebuck & Co., 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("[F]or an employer to prevail the jury need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant in good

faith *believed* plaintiff's performance to be unsatisfactory."); Moakler v. Furkids, Inc., 374 F. Supp. 3d 1306, 1318 (N.D. Ga. 2019) (same).

Moreover, while the correctness of Delta's good faith conclusions is not the issue in this lawsuit, there is also no dispute that Delta was absolutely correct in its determinations that Dais was using Stevenson's travel benefits for travel in connection with his music business.  First, Stevenson admitted in her deposition, among other things, that Dais owned a music production company (Another Dais Productions); that he worked with artists including Boyett; and that Dais and Mr. Boyett traveled together "frequently" when Mr. Dais was using her travel passes. (Stevenson Dep., pp. 77, 80-83, 186, 194-95)  Stevenson also admitted that she knew that Mr. Dais was taking Boyett, to "go to shows" and "go to concerts" and that he was "performing in this show" on June 15.  (Stevenson Dep., p. 188)

Stevenson also admitted that (with her knowledge) Dais had used her travel benefits for other business purposes connected with his music business.  For instance, Stevenson acknowledged that Mr. Dais would travel with another R&B artist (Keyshia Cole) when he was in the process of building his career and would use Stevenson's travel passes to fly back and forth to the tour bus to leave and re-join the tour.  (Stevenson Dep., pp. 198-202)

Again, even if Stevenson had not made these admissions -- there is no dispute that Delta concluded (after a detailed investigation) that Dais was using the

18

passes for business, and that Stevenson had lost control and lied about it.  And, Stevenson is far from the only individual for whom Delta reached this conclusion -- as Delta did terminated numerous other employees, including male, white and under-40, as part of the Pass Audit Process.  (Nabors Dec., ¶ 17)

For each of these independent reasons, summary judgment is warranted on Stevenson's discrimination claims.

**B.   Stevenson's Retaliation Claim Set Forth In Count V Of Her Complaint Should Also Be Dismissed.**

Stevenson also claims in this lawsuit that she was terminated because she complained to Delta about discrimination and harassment.  (Complaint, ¶ 82)

Retaliation claims under Title VII, the ADEA, the ADA and § 1981 are similarly analyzed.  See Bryant v. Jones, 575 F.3d 1281, 1301 (11th Cir. 2009).  To establish a *prima facie* case, a plaintiff must show that: "(1) [s]he engaged in statutorily protected activity; (2) [s]he experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the alleged adverse action."  Chapter 7 Trustee v. Gate Gourmet, Inc., 683 F.3d 1249, 1257-58 (11th Cir. 2012).  "Only after the plaintiff makes this prima facie case of discriminatory retaliation does the burden shift to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action."  Drago v. Jenne, 453 F.3d 1301, 1305 (11th Cir. 2006).

Here, Plaintiff's retaliation claim does not get out of the *prima facie* starting blocks.  First and most obviously, Stevenson admitted that she made no complaints about any discriminatory conduct covered by Title VII, the ADA, the ADEA or § 1981.  (Stevenson Dep., pp. 127-45)  Instead, Stevenson was able to identify only two complaints she made to Delta (both years before her termination), and neither of them asserted any violation of any anti-discrimination law.[8]  (Id.)

Second, even if one of the complaints made by her had been protected under the law, there is no evidence suggesting that either complaint was causally related to her termination in any way.  They were both years before her termination, and certainly were not close in time to her termination, in a way that would suggest any causal connection.  See Clark County Sch. Dist. v. Breeden, 532 U.S. 268 (2001) (stating the temporal proximity between the employer's knowledge of protected activity and an adverse employment action must be "very close" to be sufficient evidence in itself to establish a *prima facie* case).

Finally, even assuming Stevenson could establish a *prima facie* case, as set forth above, Defendant has articulated a legitimate, non-discriminatory reason for its actions and Stevenson can do nothing to rebut it.

---

[8] The only complaints that Plaintiff made were a complaint about an allegedly unfair piece of discipline that she received in 2010 (five years before she was fired) and a complaint about another employee allegedly "lying" about her. (Stevenson Dep., pp. 127-45) Neither of these Complaints suggested any violation of any anti-discrimination law. (Id.)

**C.**     **Stevenson's ADA Reasonable Accommodation Claim In Count I Of Her Complaint Is Also Subject To Dismissal.**

Stevenson also alleges in her Complaint that Delta failed to reasonably accommodate her in violation of the ADA.  The premise of this claim is apparently that Stevenson requested breaks or time where she would not be required to stand - - and that Delta denied such requests.  (Complaint, ¶ 23)

Stevenson's reasonable accommodation claim here fails for a host of reasons.  First, Stevenson admittedly made no request for reasonable accommodation relating to her injury (other than a request for leave, which was granted).  (Stevenson Dep., pp. 89-94, 222 and Exh. 7)  Stevenson's failure to even request such an accommodation bars her claim.  See Warren v. Volusia Cnty., Florida, 188 F. App'x 859, 863 (11th Cir. 2006) ("An employee's failure to request a reasonable accommodation is fatal to the prima facie case; the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made.") (internal citations and quotation marks omitted).

Second, and independently, even if she had asked for an accommodation, Stevenson needed no accommodation to perform the essential functions of her position.  As of October 2014, she had been released to return to work without restrictions.  (Stevenson Dep., pp. 104-05 and Exh. 19)  An accommodation is "reasonable" under the ADA if necessary to enable the employee to perform the essential functions of the job.  Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1259-

60 (11th Cir. 2001); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 835 (11th Cir. 1998).  Because Stevenson required no accommodation to perform her job functions, her reasonable accommodation claim fails.  See Hickmon v. TECO Energy, 2012 U.S. Dist. LEXIS 2339 (M.D. Fla. Jan. 9, 2012).

For all of the above reasons, Defendant Delta respectfully requests that the Court enter Summary Judgment on all claims in this matter.

Respectfully Submitted,

s/ Benjamin A. Stone
Georgia Bar No. 683850

MUNGER & STONE LLP
999 Peachtree Street, NE
Suite 2850
Atlanta, GA 30309
Tel:  (404) 815-1884
Fax: (404) 815-4687
ben.stone@mungerandstone.com

## **<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to Local Rule 7.1D of the Local Rules for the United States District Court for the Northern District of Georgia, I hereby certify that the foregoing has been prepared in Times New Roman, 14-point font, as permitted by Local Rule 5.1B

<u>s/ Benjamin A. Stone</u>
Georgia Bar No. 683850

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**QUANIAH R. STEVENSON,**

     **Plaintiff,**

**vs.**

**DELTA AIR LINES, INC.,**

     **Defendant.**

**Civil Action No.**
**1:16-cv-2571-AT-LTW**

## CERTIFICATE OF SERVICE

This is to certify that I have this 7th day of January, 2021 filed the foregoing DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to Plaintiff's counsel: Charlena Thorpe.

                                   s/ Benjamin A. Stone
                                   Georgia Bar No. 683850