Delta Air Lines 30(b)(6) K. Nabors

Page 1

```
 1         UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF GEORGIA
 2               ATLANTA DIVISION

 3
 4  QUANIAH STEVENSON,      )
                            )
 5        Plaintiff,        )
                            )
 6  vs.                     ) CIVIL ACTION:
                            ) 1:16-CV-2571-AT-LTW
 7                          )
    DELTA AIR LINES, INC.   )
 8                          )
          Defendant.        )
 9  _____)

10

11    30(b)(6) DEPOSITION OF DELTA AIR LINES, INC.

12                  (KELLY NABORS)

13

14          30(b)(6) Deposition of Kelly Nabors,

15  taken by the Plaintiff, before Kesha F.

16  Richardson, Certified Court Reporter, held at

17  Munger & Stone, LLP, 999 Peachtree Street, NE.,

18  Suite 2850, Atlanta, Georgia 30309, commencing at

19  approximately 10:30 a.m. on February 26, 2019.

20              ************

21

22

23

24

25
```

Page 2

```
 1            APPEARANCES

 2

 3  ON BEHALF OF THE PLAINTIFF:
 4  Charlena L. Thorpe, Esq.
    INCORPORATING INNOVATION, LLC
 5  6340 Sugerloaf Parkway, Suite 200
    Duluth, Georgia 30097
 6
 7  ON BEHALF OF THE DEFENDANT:
 8  Benjamin A. Stone, Esq.
    MUNGER & STONE, LLP
 9  999 Peachtree Street, NE
    Suite 2850
10  Atlanta, Georgia 30309
11
12  Sheandra R. Clark, Esq.
    Assistant General Counsel.
13  DELTA AIR LINES, INC.
    Department 981.
14  P.O. Box 20574.
    Atlanta, Georgia 30320.
15
16  ALSO PRESENT:
17  Ms. Quaniah Stevenson
18
19
20
21
22
23
24
25
```

Page 3

TABLE OF CONTENTS

Appearances ...................................3
Proceedings ...................................5
Disclosure ..................................182
Court Reporter's Certificate ................183

EXAMINATION INDEX

Examination by Ms. Thorpe .......................5

Cross-Examination by Mr. Stone ................179

Redirect-Examination by Ms. Thorpe ............180

PLAINTIFF'S EXHIBIT INDEX
Plaintiff's Exhibit 1 .........................12
   CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER -
   Stevenson/Delta _002542
Plaintiff's Exhibit 2 .........................20
   Delta Internal Memorandum - July 20, 2015

Plaintiff's Exhibit 3 .........................27
   Delta Pass Travel Policy
Plaintiff's Exhibit 4 .........................38
   Social media posts

Plaintiff's Exhibit 5 .........................50
   Passenger Flight Leg Report - 01 Aug 2007 - 08 Nov
      2017

Plaintiff's Exhibit 6 ........................100
   July 6, 2015 Letter
Plaintiff's Exhibit 7 ........................121
   Recap of appeal conversation

Plaintiff's Exhibit 8 ........................130
   Jovan Dais' California driver's license

Page 4

Plaintiff's Exhibit 9 ........................140
   E-mails

Plaintiff's Exhibit 10 .......................161
   Audit Update
Plaintiff's Exhibit 11 .......................162
   Pass Protection Group - Audit Details and Roles
      and Responsibilities, March 2014 Audit
Plaintiff's Exhibit 12 .......................171
   November 3, 2014 Pass Protection Group Audit

Plaintiff's Exhibit 13 .......................173
   Equifax TALX UCM Services
Plaintiff's Exhibit 14 .......................174
   Georgia Department of Labor Claims Examiner's
      Determination
Plaintiff's Exhibit 15 .......................175
   Social media

Plaintiff's Exhibit's 16 .....................176
   Social media posts
       DEFENDANT'S EXHIBIT INDEX

Defendant's Exhibit 1 ........................179
   Topics Discussed with Employee
Defendant's Exhibit 2 ........................180
   Delta Memo

Page 101

1  Q. If you could turn to the page labeled
2  000408.
3  A. Okay.
4  Q. It is stated that Quaniah was not
5  truthful and forthcoming. Do you see that
6  statement?
7  A. I do.
8  Q. What was Ms. Stevenson not truthful and
9  forthcoming about?
10  A. Her current companion, Mr. Dais, and she
11  was not able to verify all of the pass travel for
12  him.
13  Q. What about Ms. Stevenson's current
14  companion was she not being truthful and
15  forthcoming about?
16  A. Let me go through this really quickly,
17  and I will point out.
18      We asked a series of different questions
19  during the investigation, and she initially said
20  that they had traveled to Los Angeles together for
21  a funeral, and then she said, when we told her our
22  records don't show that they traveled together
23  since he had been added, when asked the purpose of
24  Jovan's travel to L.A., she said that his children
25  live there, and they both have family members who

Page 102

1  lived in L.A.
2      Let me continue to clarify.
3      So we gave her specific dates that he
4  was traveling to L.A., and she was not traveling
5  with him on any of those dates. When the HR
6  manager said to Quaniah that she mentioned that
7  they traveled together, and that they did travel
8  together in April, Quaniah said that they have
9  traveled together, but not for the funeral.
10     When asked, again, why they had traveled
11  together, Quaniah said that they traveled together
12  before in the past.
13     So she changed her story several times
14  during that investigation.
15  Q. If Ms. Stevenson disputes that -- if
16  Ms. Stevenson stated that she never said to
17  Delta's investigative team there that she traveled
18  with Mr. Dais, then that would be a factual
19  dispute between Ms. Stevenson and Delta; correct?
20     MR. STONE: Object to form, calls for a
21  legal conclusion.
22     MS. THORPE: That's not a legal
23  conclusion.
24     MR. STONE: For purposes of summary
25  judgment.

Page 103

1     MS. THORPE: If someone disputes facts,
2  one person has one version of facts, and
3  someone else has another version, that's a
4  disputed fact. That's not a legal
5  conclusion. That's not anything having to do
6  with the law.
7     MR. STONE: Ask the question again.
8     THE COURT REPORTER: "If Ms. Stevenson
9  disputes that -- if Ms. Stevenson stated that
10  she never said to Delta's investigative team
11  there that she traveled with Mr. Dais, then
12  that would be a factual dispute between Ms.
13  Stevenson and Delta; correct?"
14     MR. STONE: You can answer.
15     THE WITNESS: The three people that
16  heard her say that had no reason to suggest
17  she said it when she didn't. Three people in
18  the room heard her say it.
19     MS. THORPE: Objection, nonresponsive.
20     MR. STONE: Actually, it was perfectly
21  responsive.
22     MS. THORPE: No, it doesn't answer my
23  question. Could you repeat the question,
24  please?
25     THE COURT REPORTER: "If Ms. Stevenson

Page 104

1  disputes that -- if Ms. Stevenson stated that
2  she never said to Delta's investigative team
3  there that she traveled with Mr. Dais, then
4  that would be a factual dispute between Ms.
5  Stevenson and Delta; correct?"
6     THE WITNESS: That would mean that the
7  three people that said she did, that heard
8  she did, and her have a difference of
9  opinion.
10 BY MS. THORPE:
11  Q. The fact that someone is not able to
12  verify every single place that a companion has
13  traveled on their travel benefits, would that
14  suggest they're being untruthful or not
15  forthcoming?
16  A. It could be, but it also suggests a loss
17  of control.
18  Q. A loss of control is different from
19  being -- not being truthful and forthcoming.
20  A. It could be one and the same. If I've
21  lost control, because I have either given you my
22  password, you broke your flights on your own
23  through our automated line or some other way, then
24  I also would not know where you're traveling. It
25  could be both, and they could be completely

Page 157

1  **companion or buddy?**
2     A.  I'm with you.  Thank you.  It appears as
3  though the first time he traveled was in 2007,
4  December of 2007, and these go through until June
5  of 2015, and again, sometimes traveling on a buddy
6  pass, sometimes traveling as a companion.
7     **Q.  You may have made reference to it**
8  **earlier, but what is the difference?**
9     A.  The companion pass rider has an
10 unlimited amount of travel.  The employee -- and
11 they travel at a higher priority than a buddy pass
12 rider.  It simply means they get on the airplane
13 faster than a buddy pass person would, and again,
14 they can go -- there's not a limit to that.  The
15 buddy pass is one buddy pass, one trip.
16    **Q.  Does a travel companion pay for his or**
17 **her ticket?**
18    A.  There is a fee.  It's a zone fair, if
19 you will, from point A to point B, depending on
20 what point A is and what point B.  It's a small
21 fee.
22    **Q.  For the buddy pass, are those paid-for**
23 **fairs as well?**
24    A.  They are.  It's still a fee.  It is a
25 little bit higher than the companion fee, but it

Page 158

1  does not guarantee a seat on the plane.  It's just
2  the fees, taxes.
3     **Q.  The travel companion does guarantee a**
4  **seat.**
5     A.  No, neither.
6     **Q.  Is it Delta's contention that Mr. Dais**
7  **has been traveling for business since December 4,**
8  **2007 or December 2007?**
9     A.  I don't know if I can tell you that
10 since 2007 he's been traveling for business or
11 not.
12    **Q.  As we mentioned, the real travel in**
13 **question was the June 6 travel; correct?**
14    A.  The audit looked to the specific period
15 of time too, so that was kind of encompassed
16 within that audit, but yeah, the June 6th date was
17 a concern.
18    **Q.  You would agree that since Mr. Dais has**
19 **been traveling since December 2007, there has been**
20 **a considerable delay in addressing his travel**
21 **patterns; correct?**
22       MR. STONE:  Object to form.  I don't
23    know what considerable delay means.
24 BY MS. THORPE:
25    **Q.  Do you know what considerable delay**

Page 159

1  **means?**
2     A.  I don't.
3     **Q.  What don't you understand about what**
4  **that term means?**
5     A.  You're asking if there was a
6  considerable delay in reviewing her pass travel.
7  She was pulled up, along with others, for an
8  audit.  That's why we looked at the pass travel.
9  That's what that was part of, so if he was
10 traveling for business prior to that, and she got
11 lucky enough not to get caught by somebody or
12 turned in, then that's what happened.  This is an
13 audit, though.
14    **Q.  Are you saying that Delta only looked at**
15 **Mr. Dais' travel for a particular period of time?**
16    A.  We had parameters for audit, and she and
17 pass riders of hers fell within those parameters.
18    **Q.  What were those parameters?**
19    A.  I don't want to misstate the parameters.
20 They're outlined in one of our documents that
21 states kind of date and time, but I believe we
22 looked at pass travel folks that had numerous
23 segments between 2013, I believe, to the current
24 when we started the audit, and folks that had been
25 traveling on somebody else's buddy passes or

Page 160

1  companion passes, at least five or more employees'
2  passes.
3     **Q.  You said, "Pass travel segments."  What**
4  **are segments?**
5     A.  Every trip that you take is a segment,
6  so each one-way trip is one segment.
7     **Q.  Referring to Plaintiff's Exhibit 5,**
8  **there are various reports in here.  As you said,**
9  **some are buddy passes, and some are companion**
10 **passes.**
11    A.  Yes.
12    **Q.  How do you know which is which?**
13    A.  When you look here on top of this page,
14 the page number is 000532.  It says, "Passenger
15 flight leg report, August 1, 2007 through 8
16 November 2017, PPR, which is her employee number
17 that's related to her, and dash 3 is the code for
18 what this person is listed in her personal pass
19 travel, so a parent, a child, a companion, a
20 spouse, a domestic partner, all of those people
21 have their own personal number, so we know whose
22 traveling, and that number is only given to a
23 companion or somebody in your PPR, so it gives the
24 name here of our primary pass rider, which is
25 Quaniah Stevenson, the employee, and the passenger

Page 165

1  BY MS. THORPE:
2     Q.  Read the bullet point, and explain to me
3  what that is.
4     A.  "Partner with leader to prepare PD
5  letter and ensure verbiage is accurate, and the
6  infraction loss of control, travel suspension and
7  dates of travel suspensions are addressed in all
8  letters for PPR and buddies."
9       So what this is saying is when the PPG
10  group writes the investigation summary, they send
11  it to anybody that was in the room, the leader,
12  and the HR person that was in the room, and asks
13  them to review and ensure the facts are what they
14  have and what they remember as well as what the
15  PPG person had written down and remembered, so
16  that's in relation to the verbiage.
17       The infraction, for example, loss of
18  control, that's not obviously, the only infraction
19  that could be, but the travel suspension and dates
20  of travel suspension are addressed in all letters,
21  so any letter that the employee would be given, if
22  it was a PD letter, it would spell out what the
23  infraction was, the date the letter applies, and
24  the amount of time, including from X date to X
25  date of the suspension would be in effect.

Page 166

1     Q.  It says in all letters.  Does it specify
2  what type of letter?  You mentioned all letters to
3  employees, but could it be internal letters as
4  well?
5     A.  That would be a performance development
6  letter, so if an employee was not terminated, they
7  would be given a performance development letter,
8  and the point of this is make sure they understand
9  how long the travel suspension is in play and why
10  they're being given a letter.
11     Q.  What does PD stand for?
12     A.  Performance development.
13       MS. THORPE:  Let's have a five-minute
14  break or so.  I want to wrap up and make sure
15  there are no other questions.
16       (OFF THE RECORD AT 4:20 PM)
17       (BEGAN AT 4:36 PM)
18  BY MS. THORPE:
19     Q.  I previously presented to you what was
20  marked as Plaintiff's Exhibit 3, Delta's pass
21  travel policy; however, Delta produced several
22  different versions of that to me.  I wanted to ask
23  you based on the policy set forth in there, are
24  there any changes over the years, particularly
25  related to the definitions of business travel?

Page 167

1       MR. STONE:  I'm going to object to form.
2  You used the phrase, "Over the years."
3       MS. THORPE:  Well, I mean, I can
4  introduce all the other --
5       MR. STONE:  We can compare -- they
6  probably speak for themselves, Charlena, but
7  we can compare the various definitions if you
8  want.  I will tell you -- well, she can
9  answer your question.
10  BY MS. THORPE:
11     Q.  Would your answer regarding Delta pass
12  travel policy with respect to the business travel
13  set forth in Delta's pass travel policy change if
14  we looked at other documents?
15       MR. STONE:  Same objection.
16       THE WITNESS:  I don't know that -- it's
17  completely different in other documents.  It
18  could be more detailed in other documents,
19  but the pass policy is the pass policy.  It
20  has not changed dramatically at all.  If
21  we've made tweaks or edits, or like I said,
22  in The Way We Fly, it may outline more than
23  what it outlines here.
24  BY MS. THORPE:
25     Q.  How did Quaniah's travel benefits use

Page 168

1  come under scrutiny in the first place?
2     A.  Can I look at the Exhibit 6 again, the
3  investigation summary?
4     Q.  Sure.
5     A.  Thank you. Her travel was being reviewed
6  for a number of different reasons, but she shared
7  a buddy pass rider with several other Delta
8  employees, so that particular buddy pass rider,
9  Vendell Bailey, was shared by numerous different
10  employees in different stations.
11     Q.  You said for other reasons as well.  In
12  addition to Vendell Bailey, there were other
13  reasons her travel benefit use was being
14  investigated.
15     A.  When it started, the reason she did come
16  up on the travel was the shared buddy pass rider,
17  Vendell Bailey.
18     Q.  There was an investigation done with
19  respect to Vendell Bailey, and others that had
20  allowed him to use their travel benefits.
21     A.  Anybody that had Vendell Bailey on their
22  privileges was talked to, yes.
23     Q.  Do you know who those people were?
24     A.  It outlines them here:  Ernest Adams,
25  Brady Nicholson, Candice Dubois, and Sirdarius