## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| Quaniah R. Stevenson | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Civil No.: 1:16-CV-2571-AT-LTW |
| Delta Air Lines, Inc. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF QUANIAH R. STEVENSON'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT AND STATEMENT OF UNDISPUTED MATERIAL FACTS AND STATEMENT OF ADDITIONAL MATERIAL FACTS

Plaintiff Quaniah R. Stevenson brought this action in the United States District Court for the Northern District of Georgia against Defendant Delta Air Lines, Inc. for violations of the American with Disabilities Act (ADA), race discrimination, gender discrimination, age discrimination, and retaliatory discharge.

In her complaint, Ms. Stevenson, whom is over the age of 40, states that she suffered an injury while on the job at Delta in March 2014. This work injury caused her to be out of work for eight (8) months. Prior to this time, Ms. Stevenson had been successfully employed with Delta since August 1, 2007.

However, upon returning to work in November 2014, as alleged in her complaint, Ms. Stevenson was subjected to retaliation and harassment because of

her disability and because she exercised her rights under the ADA.  The harassment that Ms. Stevenson suffered is set forth in detail in Plaintiff's complaint at paragraphs 20-28, for example.  Delta's harassment caused Ms. Stevenson to suffer depression and contributed to pain caused by her work related injury, which resulted in her taking leave including an overnight stay in the hospital.

On July 28, 2015, Delta terminated Ms. Stevenson's employment alleging that Ms. Stevenson violated the company's employee travel benefits (e.g. Delta's "Pass Travel", "Travel Passes", or "Buddy Passes").  The  alleged violation was based one flight.  Ms. Stevenson contends that this reason for her termination is pretext for Delta's unlawful harassment, discrimination, and retaliation.

Delta primary defense is that Ms. Stevenson "Stevenson has no evidence that Delta's decision was because of her race, sex, gender and/or alleged disability, and her claims fail as a matter of law."  (Def.'s Br. Supp. Mot. Summ. J. 2 ECF No. 88-2.)  Delta alleges that "Stevenson cannot identify anyone, of any race, age or sex, who Delta found to have lost control of their passes and allowed them to be used for business travel, and who Delta then found to be untruthful during an investigation, who was not treated the same." (Id. at 15.)

Delta alleges that "Delta produced the records which established, again, that none of these individuals engaged in the wide array of travel pass misconduct in

which Plaintiff engaged." (Id. at 16 n.7.).  However, as discuss in detailed below, Delta only alleges **<u>one (1)</u>** travel violation of Ms. Stevenson, not a "wide array of travel pass misconduct."   Furthermore, as discussed in detailed below, the allegations that there is no evidence of others that committed the alleged same (or much worse) conduct as Ms. Stevenson but was allowed to keep their job is blatantly untrue.

Delta further assert that "Delta concluded in good faith that Dais was using his passes for business travel connected with his music business and concluded that Plaintiff had lost control of her travel passes and lied to Delta about it." (Id. at 17.)

Delta further asserts that it had a legitimate, nondiscriminatory reason for its action. (Id. at 20.)  Still further, Delta asserts that "Stevenson admitted that she made no complaints about any discriminatory conduct covered by Title VII, the ADA, the ADEA or § 1981." (Id.)

First, Delta has not addressed or fully addressed Ms. Stevenson's harassment (e.g., under Title V), hostile work environment, and retaliation claims under the ADA.  See, e.g., In Fox v. General Motors Corp., 247 F.3d 169 (4th Cir. 2001); Flowers v. Southern Regional Physician  Services, Inc., 247 F.3d 229 (5th Cir. 2001); EEOC v. BobRich Enterprises, No. 3:05-CV01928-M (N.D. Tex. Jul. 27, 2007; Arrieta-Colon v. Wal-Mart Stores, 434 F.3d 75 (1st Cir. 2006); Quiles-Quiles

v. Henderson, 439 F.3d 1 (1st Cir. 2006).   For example, under the ADA, retaliation claims can arise absent complaints about discrimination or harassment.   For example, protected activity can also arise when an employee requests a reasonable accommodation under the Americans With Disabilities Act (ADA).   Plaintiff contend that Defendant retaliated by harassing Plaintiff for exercising her rights.

Second, evidence shows that Ms. Stevenson was treated less favorably and differently (i.e., terminated with no warning for an alleged single violation of travel benefits) than individuals outside of her protected classification for those claims that require her to prove that she is in a protected class.   (See, e.g., Nabors Deposition, pp. 71-100, 169-173, 135-139, Ex. 1 and any other exhibits cited therein; Franz Deposition).   Evidence shows that the individuals outside of her protected classification for those claims that require her to prove that she is in a protected class that committed more egregious acts were allowed to keep their job. Evidence shows that the reason for terminating Ms. Stevenson was subjective, unsubstianted, purely speculative, and not good faith, yet individuals outside of her protected classification for those claims that require her to prove that she is in a protected class where allegations were "unsubstiated" were allowed to keep their job.  Evidence shows that Delta investigated her travel more rigorously that individuals outside of her protected classification for those claims that require her to prove that she is in a

protected class.  There is absolutely no good faith evidence in the record that Dias was traveling on business. In fact, the primary reasons that Delta provides is that "" and Delta cits to no evidence that Boyette was Dias's client.  Delta admits that Dias activity in connection with the travel was consistent with leisure travel, however, the key reasoning for concluding it was business, Delta has absolutely no evidence. This is very problematic because The evidence shows that Delta "took the word" of or gave "the benefit of the doubt" to individuals outside of her protected classification for those claims that require her to prove that she is in a protected class but did not take Ms. Stevenson's work.  Evidences shows that Delta did not perform online research, like it did in her investigation, to investigate individuals outside of her protected class.

Third, Ms. Stevenson can prove that Delta's reason for terminating her employment is pretext (as discussed below\

Plaintiff responds to Defendant's Statement of Undisputed Facts as follow:

1.  Admit.

2.  Defendant admits that she worked at least in the areas listed.

3.  Plaintiff denies that she was ever "disciplined" for her attendance and job performance during her employment except for when she was terminated on or about July 28, 2015.  (See Decl. Quaniah Stevenson Ex. 1, ¶7.)  Plaintiff admits that

she received a warning letter on 1/11/2009 for tardiness that occurred on 1/4/2009 through 1/6/2009 and that she received coaching on 10/11/2012 (for tardiness due to being sick and car issues; Plaintiff was advised to call the sick line), December 2, 2013 (for coming to work 30 minutes late), March 9, 2014 (for time management and company policy regarding clocking in/out and attending briefing), March 22, 2014 (for tardiness due to family issues and FMLA), and on March 23 2014 (for safety after injury at work that is the subject of this complaint). (See Dep. Quaniah Stevenson 108-133, 144, ECF No. 88-4; Id. Ex. 9, ECF No. 88-7, Ex. 10, ECF No. 88-8.) Defendant denies that she received a verbal warning on 2/14/2013 (Id. at 112, ECF No. 88-4.) Defendant denies that she received coaching on 2/19/2013. (Id. at 113-15.) Defendants denies that she received coaching on 3/7/15. (Id. at 116-18.)

4.    Admit

5.    Admit

6.    Plaintiff denies that Delta periodically issues reminders to employees of the importance of complying with the policies regarding pass travel. (See Decl. Quaniah Stevenson Ex. 1, ¶8.)

7.    Plaintiff denies that Delta expressly prohibits the use of travel passes for anything other than leisure travel. (See Dep. Quaniah Stevenson Ex. 8, at 1, ECF No. 88-6.) The cited document establishes that Delta permits non-leisure travel (e.g.,

for emergency purposes and for "official Company or government business"). (Id.) Furthermore, Delta has produced documents where numerous employees have been permitted to allow their travel passes to be used for business travel without any discipline, minor consequences (e.g., verbal coaching), or discipline less than termination. These include:

- Marian Bicksler (see Dep. Kelly Nabors 71-74, ECF No. 92; Id. Ex. 1, at 2, ECF No. 92-1);

- Cindy Fudala (Id. at 75-76, ECF No. 92; Id. Ex. 1, at 3, ECF No. 92-1);

- Douglas Rehm (Id. at 78-80, ECF No. 92; Id. Ex. 1, at 3, ECF No. 92-1; see also. Ex. 2). It is noted that Delta includes in business travel "travel if the cost of transportation could be reimbursed by an external company organization" (see Dep. Kelly Nabor Ex. 3, at 2, ECF No. 92-3). In Rehm's case, Douglass Rehm admitted that the person using his travel pass was seeking reimbursement of the cost of transporation. See Ex. 2 ("Carson was attempting to obtain a receipt **so that he would be reimbursed for the taxes and other fees associated with the pass**.")

- Susan Galyardt (Dep. Kelly Nabor 80-82, ECF No. 92; Id. Ex. 1, at 5, ECF No. 92-1). In this case, it was admitted that Ms. Galyardt travel pass was used for business purposes. However, instead of permanently suspending her

travel pass privileges (which would have been analogous to termination), Ms. Galyardt could reapply for travel benefits in 3 years).

- Bryan McKenzie (Id. at 84-88, ECF No. 92; Id. Ex. 1, at 5, ECF No. 92-1). Mr. McKenzie was able to keep his job after travel pass use for business purposes.

- Randolph Bucher (Id. at 88-89, ECF No. 92; Id. Ex. 1, at 5, ECF No. 92-1). Mr. Bucher was able to retire in lieu of termination after travel pass use for business purposes.

- Debbra Mercer (Id. at 92-93, ECF No. 92; Id. Ex. 1, at 9, ECF No. 92-1).  Ms. Mercer was able to keep her job although her travel pass was used for business purposes.

- Angel Mooring (Id. at 93-96, ECF No. 92; Id. Ex. 1, at 9, ECF No. 92-1).  Ms. Mooring was able to keep her job although her travel pass was used for business purposes.  It is noted Delta includes in business travel "nonrevenue standby … on any flight for which a pass rider is holding or has held a confirmed reservation . . . . " (see Dep. Kelly Nabor Ex. 3, at 2, ECF No. 92-3).

- Heather Cross (<u>Id.</u> at 97-99, ECF No. 92; <u>Id.</u> Ex. 1, at 13, ECF No. 92-1; <u>see also</u>. Ex. 3). Ms. Cross was able to keep her job although her travel pass was used for extensive business purposes.

- David Bishton (<u>see</u> Dep. Barbara Franz 88-104, ECF No. 89; <u>Id.</u> Ex. 22, ECF No. 89-12; <u>Id.</u> Ex. 23, ECF No. 89-13; <u>Id.</u> Ex. 24, ECF No. 89-14).   Mr. Bishton was able to escape an intensive investigation by Delta although a quick internet search by Ms. Quaniah Stevenson reveals that Mr. Bishton travel pass was used for extensive business purposes by his marathon runner brother. (<u>See</u> Decl. Quaniah Stevenson Ex. 1, ¶15.) Delta took Mr. Bishton's word and did not perform any independent investigation.

8.     Plaintiff admits that travel companion and buddy passes are provided at free and reduces rates and it is the intention of Delta that they be uses for leisure travel.  Plaintiff denies the remaining allegations.  (<u>See</u> Dep. Quaniah Stevenson Ex. 8, ECF No. 88-6.)

9.     Plaintiff denies these allegations.  (<u>See</u> Dep. Quaniah Stevenson Ex. 8, ECF No. 88-6.).  Plaintiff incorporates by reference Plaintiff's response to paragraph 7.   Plaintiff in her deposition only admitted that it her responsibility to the follow the rules.  Plaintiff incorporates by reference Plaintiff's response to paragraph 15.

10.     Admit

11.    Plaintiff denies that Delta's Travel Pass Policy states that business travel is expressly prohibited. Delta's Travel Pass Policy allows some business travel and other travel.  (See Stevenson Deposition, Exh. 8, p. 2.) Plaintiff incorporates by reference Plaintiff's response to paragraph 7.

12.    Plaintiff denies Plaintiff was aware that Delta requires that its employees keep "control" of their passes and the passes of their designated companions -- including by ensuring that the employee is aware of the travel being undertaken by their companion and that the pass travel is not for business or other improper purposes.  (See Decl. Quaniah Stevenson Ex. 1, ¶9).  Plaintiff incorporates by reference Plaintiff's response to paragraph 15.

13.    Plaintiff denies that Plaintiff was aware that Delta employees are responsible for overseeing and maintaining control of the use of their travel passes and ensuring that their non-employee travel companions comply with these Delta policies relating to travel passes.  (See Decl. Quaniah Stevenson Ex. 1, ¶9.)

14.    Plaintiff denies the allegation and paragraph 14 and asserts that this is merely pre-text for wrongfully firing Plaintiff.

15.    Plaintiff denies the allegation and paragraph 14 and asserts that this is merely pre-text for wrongfully firing Plaintiff.  Plaintiff denies the allegation and paragraph 15.  The memo states that employees may only use the Delta's pass travel

privileges for leisure only and provides that "[w]hen you decide with whom you are going to share them, do so wisely.  Know the individual well and enough to trust he or she will use the pass travel privileges properly".  The memo does not purport to hold an employee strictly liable for others use of the employee's travel pass privileges.   Instead, the memo, only requires that the employee "[k]now the individual well and enough to trust he or she will use the pass travel privileges properly."  (See Dep. Quaniah Stevenson Ex. 13 at Q6, ECF No. 88-11; see also, Dep. Barbara Franz 29-31, ECF No. 89.)

16.    Plaintiff admits that the April 2014 communication states, "[d]on't share your passes with anyone who intends to use pass travel for business purpose".

17.    Plaintiff denies the allegation of 17.  Q4 is directed to employee use while Q6 is directed to others use of the pass travel privileges. Regarding an employee's use, the memo states that only using travel privileges for business purpose use by an employee "can result in loss of travel privileges and even termination from employment."  Regarding others use, the memo states that only "accepting money or other goods or services in exchange for pass travel privileges" "may result in termination of [] employment." (See Stevenson Deposition, Exh. 13 at Q6.).  The last sentence of Q6 modifies the immediately proceeding paragraph. Q10 merely indicates that "in some cases" termination of employment may result

for "[p]ass travel abuse or misconduct by any associated pass rider."  The "some cases" are expressly stated in Q6 for only "accepting money or other goods or services in exchange for pass travel privileges."

18.   Admit

19.   Admit

20.   Plaintiff denies the allegations in paragraph 20 and asserts that this is merely pre-text for wrongfully firing Plaintiff.  Furthermore, Ms. Nabors could not speak with certainty on this point and states, "·I don't want to misstate the parameters . . . . but *I believe* . . . ." (See Dep. Kelly Nabors 160, ECF No. 92 (emphasis added).) Plaintiff Quaniah R. Stevenson brought this action in the United States District Court for the Northern District of Georgia against Defendant Delta Air Lines, Inc. for violations of the American with Disabilities Act (ADA), race discrimination, gender discrimination, age discrimination, and retaliatory discharge.   In her complaint and declaration attached hereto, Ms. Stevenson, whom was over the age of 40 at all relevant times, states that she suffered an injury while on the job at Delta in March 2014.  (See Decl. Quaniah Stevenson Ex. 1, ¶¶1-2.)  This work injury caused her to be out of work for eight (8) months.  (See Decl. Quaniah Stevenson Ex. 1, ¶2.)  Prior to this time, Ms. Stevenson had been successfully employed with Delta since at least August 1, 2007.  (See Decl. Quaniah Stevenson Ex. 1, ¶3; see also ep. Kelly Nabors

139-153, ECF No. 92; Id. Ex. 2, ECF No. 92-2 and Id. Ex. 9, ECF No. 92-9.) However, upon returning to work in November 2014, as alleged in her complaint and declaration attached hereto, Ms. Stevenson was subjected to retaliation and harassment because of her disability and because she exercised her rights under the ADA.   (See Decl. Quaniah Stevenson Ex. 1, ¶¶4-5.)   The harassment that Ms. Stevenson suffered is set forth in detail in Plaintiff's complaint at paragraphs 20-28, for example.   (See Decl. Quaniah Stevenson Ex. 1, ¶5.)   Delta's harassment caused Ms. Stevenson to suffer depression and contributed to pain caused by her work related injury, which resulted in her taking leave including an overnight stay in the hospital.   (See Decl. Quaniah Stevenson Ex. 1, ¶6.)   On July 28, 2015, Delta terminated Ms. Stevenson's employment however, alleging that Ms. Stevenson violated the company's employee travel benefits (e.g. Delta's "Pass Travel", "Travel Passes", or "Buddy Passes").   (See Decl. Quaniah Stevenson Ex. 1, ¶7.)   This reason for her termination is pretext for Delta's unlawful harassment, discrimination, and retaliation. Delta's reason for terminating Ms. Stevenson's employment is pretext because:

(1) Delta has changed its reason for the termination (See, e.g., Dep. Kelly Nabors 21-26, ECF No. 92; contrast Id. Ex. 2, ECF No. 92-2, Ex. 6, ECF No. 92-6, Ex. 11,

ECF No. 92-11, Ex. 13, ECF No. 92-13, Ex. 14, ECF No. 92-14, and Defendant's
Ex. 2, ECF No. 92-19).

(2) similarly situated employees were treated differently (See, e.g., Dep. Kelly
Nabors 71-100, 169-173, 135-139, ECF No. 92; Id. Ex. 1, ECF No. 92-1.) All the
white employees investigated and were able to keep their jobs were giving the
benefit of doubt, were treated less harshly, and were scrutinize far less. The
following employees were treated differently:

*the employees listed in Plaintiff response to Paragraph 7, which is incorporated
herein by reference.

*David Ragan (see Dep. Barbara Franz 110-116, ECF No. 89; Id. Ex. 18, ECF No.
89-9.)   Mr. Ragan was able to keep his job despite not being able to recall several
buddy pass riders, giving away his password for booking flights, and other more
egregious infractions than alleged by Plaintiff.

*Richard Service (see Dep. Barbara Franz 116-124, ECF No. 89; Id. Ex. 19, ECF
No. 89-10.)    Mr. Service was able to keep his job despite making numerous
untruthful statements and losing control of his travel pass, among other egregious
infractions.

*Sabrina Simmons (see Dep. Barbara Franz 127-136, ECF No. 89; Id. Ex. 19, ECF No. 89-11.)  Ms. Simmons was able to keep her job despite not being able to recall where her travel companion traveled whom appears to have been traveling for business.  Ms. Simmons did not know when he traveled and why he traveled. Ms. Simmons also did not know all here travel companions. Ms. Simmons was never questioned on why her travel companions used her travel pass.  There was thorough investigation. Ms. Simmons egregious acts were swept under the rug and she was able to keep her job despite the numerus egregious infractions.

* Sidarious Johnson (see Dep. Barbara Franz 104-110, ECF No. 89; Id. Ex. 12, ECF No. 89-5.).  Defendant claims that Ms. Quaniah Stevenson was investigated because of Vendal Bailey however Sirdarious Johnson, who was investigated in association with Mr. Bailey, committed more egregious conduct yet was allowed to keep his job. Mr. Bailey is a male and under the age of 40.

(3) Mr. Dais has been traveling under Ms. Stevenson's Delta travel benefits since 2007 yet Delta only decided to investigate Mr. Dais until after Ms. Stevenson's

disability and after she exercised her rights under the ADA.  This considerable delay suggests that Delta's reason was a pretextual afterthought, especially when the reason is articulated for the first time in response to Ms. Stevenson's claims of harassment and retaliation (see, e.g., Dep. Kelly Nabors 156-57, ECF No. 90 and exhibits cited therein);

(4) it is impossible for an employee to always know the reasons someone uses a travel pass; this unattainable goal is evidence of pretext.  See, e.g., Denesha v. Farmers Ins. Exch., 161 F.3d 491, 499 (8th Cir. 1998) (holding the imposition of unattainable production goals on an employee was evidence supporting a jury's finding of discrimination); see also, Dep. Barbara Franz 79, ECF No. 89.

(5) Delta deviated from its normal management procedures when it summarily terminated Ms. Stevenson (See, e.g., Dep. Kelly Nabors 161-62, ECF No. 92; Id. Ex. 10, ECF No. 92-10). More specifically, Ms. Stevenson was terminated for loss of control (See, e.g., Id. Ex. 2, ECF No. 92-2, Ex. 13, ECF No. 92-13, and Ex. 14, ECF No. 92-14.)  Delta normally takes corrective action, for example, a two-year pass suspension of benefits, when there is a loss of· control of pass travel privileges

(see, e.g., Id. 161-62, ECF No. 92; Id. Ex. 10, ECF No. 92-10.).  However, in this case, Ms. Stevenson was fired.

(6) Ms. Stevenson had a good performance history (see, e.g., Id. 139-153, ECF No. 92; Id. Exs. 2, ECF No. 92-2 and Ex. 9. ECF No. 92-9) and, in fact, Delta's subsidiary had re-hired Ms. Stevenson and restored her travel pass privileges (See Decl. Quaniah Stevenson Ex. 1, ¶11.);  See, e.g., *59 Causes of Action 2d, Cause of Action under Age Discrimination in Employment Act* §24 (2013): ("[E]vidence of satisfactory or superior performance evaluations … may tend to show … the illegitimate nature of the defendant's articulated reason.").

(7) despite Ms. Stevenson's long employment history with Delta, Delta cites to only **one alleged travel pass violation** as its reasoning to terminate Ms. Stevenson.  (See, e.g., Dep. Kelly Nabors Ex. 2, ECF No. 92-2, Ex. 13, ECF No. 92-13, and Ex. 14, ECF No. 92-14.)  See, Stalter v. Wal-Mart Stores, Inc., 195 F. 3d 285 (7th Cir. 1999)("More compelling is the severity of the punishment in relation to the alleged offense. … This strikes us as swatting a fly with a sledge hammer. That Wal-Mart felt compelled to terminate Stalter for this offense does not pass the straight-face test …."").

(8) Ms. Steven, in fact, did not violate any travel pass policy. More specifically, there is no credible or good faith evidence that Mr. Dias was traveling on business (<u>See, e.g.,</u> Dep. Kelly Nabors 33- 70, 175-176, ECF No. 92 and Ex. 2, ECF No. 92-2 and Ex. 9, ECF No. 92-9).  Defendant contends that social media post are the bases for the conclusion that Mr. Dias was traveling for business (<u>See, e.g., Id</u>., Ex. 2, ECF No. 92-2.)  However, Delta could not point to any credible social media posts that Mr. Dias was traveling for business.  (<u>See, e.g., Id</u>. 33–70 and 175-176, ECF No. 92 and exhibits cited therein).  There is no credible evidence that Mr. Boyett was a client of Mr. Dias or that Mr. Dias made a profit from the travel.    In fact, the evidence establishes that Mr. Dias is a residency of California (the destination of the travel) and that Mr. Dias has a daughter that lives in California, which the evidence established that he visited his daughter during the travel and attend, for leisure, a concert.  (<u>See, e.g., Id.</u> 29-30, and 113-133, ECF No. 92 and exhibits cited therein). Delta admits that this sort of travel is <u>not</u> business travel but leisure/personal travel. (<u>See, e.g., Id.</u> 29-30, and 113-133, ECF No. 92).

21.    Plaintiff denies the allegations in paragraph 21 and asserts that this is merely pre-text for wrongfully firing Plaintiff.  Plaintiff incorporates by reference Plaintiff's response to paragraph 20.

22.     Plaintiff denies the allegations in paragraph 22 and asserts that this is merely pre-text for wrongfully firing Plaintiff.  Plaintiff incorporates by reference Plaintiff's response to paragraph 20.  Furthermore, others that provided travel passes to Mr. Bailey, were not fully and carefully reviewed and to the extent as Plaintiff. (See, e.g., Nabors Deposition 169-173, ECF No. 92 and exhibits cited therein);

23.     Plaintiff denies the allegations in paragraph 23 and asserts that this is merely pre-text for wrongfully firing Plaintiff.  Plaintiff incorporates by reference Plaintiff's response to paragraph 20.  Furthermore, Jovan Dais travel does not reflect possible business travel use.

24.     Plaintiff denies the allegations in paragraph 24 to the extent they contradict the record, which speaks for itself.  (See Decl. Jovan Dias Ex. 3.)

25.     Plaintiff denies the allegations in paragraph 25 and asserts that this is merely pre-text for wrongfully firing Plaintiff.  Plaintiff incorporates by reference Plaintiff's response to paragraph 20.   There is no credible evidence that Mr. Dias was traveling on business or that Mr. Dias "worked" with or for Mr. Boyett (See, e.g., Nabors Deposition, pp. 33- 70, 175-176, and Exhs. 2 and 9; see also Decl. Jovan Dias Ex. 3.).   Defendant contends that social media post are the bases for the conclusion that Mr. Dias was traveling for business (See, e.g., Nabors Deposition, Exh. 2).  However, Delta could not point to any credible social media posts that Mr.

Dias was traveling for business.  (See, e.g., Nabors Deposition, pp. 33–70 and 175–176 and exhibits cited therein).  There is no credible evidence that Mr. Boyett was a client of Mr. Dias or that Mr. Dias made a profit from the travel.   (See Decl. Jovan Dias Ex. 3.) In fact, the evidence establishes that Mr. Dias is a residency of California (the destination of the travel) and that Mr. Dias has a daughter that lives in California, which the evidence established that he visited his daughter during the travel and attend, for leisure, a concert.  (See, e.g., Nabors Deposition, pp. 29-30, and 113-133 and exhibits cited therein). Delta admits that this sort of travel is not business travel but leisure/personal travel.  (See, e.g., Nabors Deposition, pp. 29-30, and 113-133).

26.    Plaintiff denies the allegations in paragraph 26 and asserts that this is merely pre-text for wrongfully firing Plaintiff. Plaintiff incorporates by reference Plaintiff's response to paragraph 20 and 25.   The record does not reflect that Mr. Dais and Mr. Boyett "performed" together.  (See Decl. Jovan Dias Ex. 3.)

27.    Plaintiff denies the allegations in paragraph 27, Mr. Boyette was not on Ms. Stevenson travel pass during the June 6. 2015 travel. (See Exh. 1, paragraph 10; See, Franz Deposition Ex. 27, ECF. 89-14.)

28.    Plaintiff denies the allegations in paragraph 28 to the extent they contradict the record, which speaks for itself.

29.    Plaintiff denies the allegations in paragraph 29.

30.     Plaintiff denies the allegations in paragraph 30 and asserts that this is merely pre-text for wrongfully firing Plaintiff. Plaintiff incorporates by reference Plaintiff's response to paragraph 20 and 25.  The record does not reflect that Mr. Dais and Mr. Boyett were work partners.  (See Decl. Jovan Dias Ex. 3.) Mr. Diaz and Mr. Boyett are friends, not business associates (See Exh. 1, paragraph 14.); (See Decl. Jovan Dias Ex. 3.)  Further, Defendant admits that friends travel together and pay for each other. (See, e.g., Nabors Deposition, p. 47).

31.     Plaintiff denies the allegations in paragraph 31.

32.     Plaintiff denies the allegations in paragraph 32 and asserts that this is merely pre-text for wrongfully firing Plaintiff. Plaintiff incorporates by reference Plaintiff's response to paragraph 20.

33.     Admit

34.     Admit

35.     Plaintiff denies the allegations in paragraph 35 and asserts that this is merely pre-text for wrongfully firing Plaintiff.   Plaintiff incorporates by reference Plaintiff's response to paragraphs 20, 25, 27, and 30.

36.     Plaintiff denies the allegations in paragraph 36.

37.     Plaintiff denies the allegations in paragraph 37 and asserts that this is merely pre-text for wrongfully firing Plaintiff.   Plaintiff incorporates by reference Plaintiff's response to paragraphs 20, 25, 27, and 30.

38.     Plaintiff denies the allegations in paragraph 38 and asserts that this is merely pre-text for wrongfully firing Plaintiff.   Plaintiff incorporates by reference Plaintiff's response to paragraphs 20, 25, 27, and 30.

39.     Plaintiff denies the allegations in paragraph 39 and asserts that this is merely pre-text for wrongfully firing Plaintiff.   Plaintiff incorporates by reference Plaintiff's response to paragraphs 20, 25, 27, and 30.

40.     Plaintiff denies the allegations in paragraph 40 and asserts that this is merely pre-text for wrongfully firing Plaintiff.   Plaintiff incorporates by reference Plaintiff's response to paragraphs 20, 25, 27, and 30.

41.     Plaintiff denies the allegations in paragraph 41 and asserts that this is merely pre-text for wrongfully firing Plaintiff.   Plaintiff incorporates by reference Plaintiff's response to paragraphs 20, 25, 27, and 30.

42.     Plaintiff denies the allegations in paragraph 42 and asserts that this is merely pre-text for wrongfully firing Plaintiff.   Plaintiff incorporates by reference Plaintiff's response to paragraphs 20, 25, 27, and 30.

43.     Plaintiff denies the allegations in paragraph 43 and asserts that this is merely pre-text for wrongfully firing Plaintiff.   Plaintiff incorporates by reference Plaintiff's response to paragraphs 20, 25, 27, and 30.

44.     Plaintiff denies the allegations in paragraph 44 and asserts that this is merely pre-text for wrongfully firing Plaintiff.   Plaintiff incorporates by reference Plaintiff's response to paragraphs 20, 25, 27, and 30.  Plaintiff advised Delta Mr. Dais also lived in California and before the termination and appeal.  See Quaniah Declaration, Ex. 1.

45.     Plaintiff denies the allegations in paragraph 45 and asserts that this is merely pre-text for wrongfully firing Plaintiff.   Plaintiff incorporates by reference Plaintiff's response to paragraphs 16, 21.  Specially, the evidence establishes that Delta was provided evidence that Mr. Dias is a residency of California (the destination of the travel) and that Mr. Dias has a daughter that lives in California, which the evidence established that he visited his daughter during the travel and attend, for leisure, a concert.  (See, e.g., Nabors Deposition, pp. 29-30, and 113-133 and exhibits cited therein). Delta admits that this sort of travel is not business travel but leisure/personal travel.  (See, e.g., Nabors Deposition, pp. 29-30, and 113-133).

46.     Plaintiff denies the allegations in paragraph 43 and asserts that this is merely pre-text for wrongfully firing Plaintiff.   Plaintiff incorporates by reference Plaintiff's response to paragraphs 20, 25, 27, and 30.

47.     Plaintiff denies the allegations in paragraph 43 and asserts that this is merely pre-text for wrongfully firing Plaintiff.   Plaintiff incorporates by reference Plaintiff's response to paragraphs 20, 25, 27, and 30.

48.     Admit

49.     Deny.  Upon returning to work in November 2014, as alleged in her complaint and declaration attached hereto, Ms. Stevenson was subjected to retaliation and harassment because of her disability and because she exercised her rights under the ADA.  (See Exh. 1, paragraphs 4-5.)  The harassment that Ms. Stevenson suffered is set forth in detail in Plaintiff's complaint at paragraphs 20-28, for example.  (See Exh. 1, paragraph 5.)  Delta's harassment caused Ms. Stevenson to suffer depression and contributed to pain caused by her work related injury, which resulted in her taking leave including an overnight stay in the hospital.  (See Exh. 1, paragraph 6.)   Furthermore, upon returning to work in November 2014, as alleged in her complaint and declaration attached hereto, Ms. Stevenson was subjected to retaliation and harassment because of her disability and because she exercised her rights under the ADA.  (See Exh. 1, paragraphs 4-5.)  The harassment that Ms.

Stevenson suffered is set forth in detail in Plaintiff's complaint at paragraphs 20-28, for example.  (<u>See</u> Exh. 1, paragraph 5.)  Delta's harassment caused Ms. Stevenson to suffer depression and contributed to pain caused by her work related injury, which resulted in her taking leave including an overnight stay in the hospital.  (<u>See</u> Exh. 1, paragraph 6.) Upon returning to work in November 2014, as alleged in her complaint and declaration attached hereto, Ms. Stevenson was subjected to retaliation and harassment because of her disability and because she exercised her rights under the ADA.  (<u>See</u> Exh. 1, paragraphs 4-5.)  The harassment that Ms. Stevenson suffered is set forth in detail in Plaintiff's complaint at paragraphs 20-28, for example.  (<u>See</u> Exh. 1, paragraph 5.)  Delta's harassment caused Ms. Stevenson to suffer depression and contributed to pain caused by her work related injury, which resulted in her taking leave including an overnight stay in the hospital.  (<u>See</u> Exh. 1, paragraph 6.) On July 28, 2015, Delta terminated Ms. Stevenson's employment however,  alleging that Ms. Stevenson violated the company's employee travel benefits (e.g. Delta's "Pass Travel", "Travel Passes", or "Buddy Passes").  (<u>See</u> Exh. 1, paragraph 7.)  This reason for her termination is pretext for Delta's unlawful harassment, discrimination, and retaliation.

50.    Deny. Plaintiff incorporates her response to paragraph 49.

51.    Deny. Plaintiff incorporates her response to paragraph 49.

52.     Deny. Plaintiff incorporates her response to paragraph 49/

53.     Deny. Plaintiff incorporates her response to paragraph 49

Respectfully submitted this 31st day of July, 2019.

/s/ Charlena Thorpe
Charlena L. Thorpe
Georgia Bar No. 760954
charlena@incorporatinginnovation.com
6340 Sugarloaf Parkway Suite 200, Duluth,
GA 30097
Tel: 770-325-2741
Fax:  770-325-2741

*Attorney for Plaintiff*

**Counsel certifies that the brief has been prepared with one of the font and point selections approved by the court in LR 5.1C.  Counsel further certifies that counsel attempted to meet and confer with Defendant's counsel prior to serving this motion.

I certify that I have served **PLAINTIFF QUANIAH R. STEVENSON'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT AND STATEMENT OF UNDISPUTED MATERIAL FACTS AND STATEMENT OF ADDITIONAL MATERIAL FACTS** via the Court's CM/ECF system on the date below, to opposing counsel of record.

Dated: September 27, 2019     By: /s/ Charlena Thorpe
                              Charlena Thorpe